◼    In the Matter of D. WALLACE PETERKIN, JR., Petitioner, v. BOARD OF EDUCATION, UNION FREE SCHOOL DISTRICT NO. 5, TOWNS OF MOUNT PLEASANT, GREENBURGH and NORTH CASTLE, Respondent.— Proceeding pursuant to article 78 of the CPLR to review a determination of the respondent Board of Education, dated January 13, 1970, which, after a hearing, (1) found petitioner (a licensed, tenured high school teacher) guilty of a charge of nonperformance of duty on October 27, 1969 and of insubordination as a result of his alleged failure to explain his absence of October 27, 1969 and (2) suspended petitioner without pay for 15 days on the nonperformance charge and 30 days on the insubordina-tion charge, but ordered the penalties to be deemed concurrent and the prior suspension of petitioner from November 3, 1969 to December 1, 1969 to be considered as satisfying the penalties. Determination modified, on the law, by annulling so much thereof as found petitioner guilty of the charge of non-performance of duty on October 27, 1969 and imposed a penalty therefor. As so modified, determination confirmed, without costs. Petitioner, a tenured Valhalla high school art teacher since 1960, resided in Valhalla. There was evidence that on Sunday night, October 26, 1969, his wife telephoned the home of the high school principal and left word that petitioner was ill and would be out Monday and Tuesday. The district principal testified that, on Monday, October 27, 1969, while sitting in a barber chair in Pleasantville, at about 11:25-11:45 A.M., he saw petitioner walk by on the street and that "by the way he looked in general appearances and by his stride, he looked in good health." On returning to his office, the district principal called the high school, ascertained that petitioner was on the absent list, advised the high school principal that petitioner had been seen on the street in Pleasantville and directed the high school principal to arrange for petitioner's presence at a conference to be held at the district principal's office upon petitioner's return. On Tuesday morning, October 28, the high school principal telephoned petitioner and asked about his absence and petitioner explained that he had been ill and described his illness in some detail. The high school principal told petitioner that he had been seen on the street in Pleasantville and was to report to a conference with the district principal to explain his absence. Petitioner then asked if he should bring a note from his doctor or his mother. He was asked to bring a note from his doctor. On Wednesday, October 29, petitioner reported to the conference reluctantly but when there asked about the cause of his absence he questioned whether the "book" required any explanation and told the district principal to speak to his (petitioner's) lawyer and walked out, slamming the door. The teacher's collective bargaining contract contains no provision requiring a doctor's certificate for two days of absence due to illness. At the hearing, however, petitioner placed in evidence a letter from his doctor. The letter referred to a November 6, 1969 examination of petitioner and stated that at that

time petitioner gave a history of symptoms of upper respiratory infection starting almost two weeks theretofore. The letter further stated that on October 21, 1969 petitioner's wife had acute nasopharyngitis and bronchitis with bronchopneumonia, for which she was still under treatment, and that as of November 6, 1969 there was a history of virus and bacterial upper respiratory infection in the household. The letter stated as to petitioner: "The patient had attempted to 'medicate' himself with patent medications and carry on while the rest of the family was ill but presented for medical attention because of symptoms of increasing weakness, malaise and soreness in the throat. Physical examination confirmed the presence of change in the mucus membranes of the nose and throat compatible with a diagnosis of acute nasopharyngitis and sinusitis. In addition, enlarged lymph nodes were found in the neck related to the above infection." Petitioner's medical evidence was uncontroverted except as to the barber-chair observation. In our opinion, respondent's determination that petitioner neglected his duty on October 27, 1969 was unsupported by substantial evidence. However, whether or not petitioner was required to present a doctor's note for his illness, once the district superintendent was confronted with prima facie evidence that petitioner's illness might not be *bona fide*, the district superintendent's investigation was appropriate and his request for an explanation was lawful and warranted a direct response. Thus, there was substantial evidence to support the insubordination finding. Although petitioner has raised many other contentions, we find none of them to have sufficient merit. Gulotta, P. J., Hopkins, Shapiro, Christ and Munder, JJ., concur.